**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **NVK Spinning Co., LTD.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 12-2904** |
| **Carl G. Nichols III,** | ) | |
| **Defendant.** | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' Motions for Summary Judgment. On October 16, 2012, Plaintiff NVK Spinning Co., LTD. ("NVK") filed a Complaint against Defendant Carl G. Nichols III ("Nichols"). (Compl., ECF No. 1.) NVK seeks judgment against Nichols for the amount of an arbitration award NVK won against Silverleafe International, LLC ("Silverleafe"), a defunct limited liability company ("LLC") that Nichols formed. (Id. ¶¶ 5, 20, 35.) On April 1, 2013, NVK filed a Motion for Summary Judgment against Nichols, asking the Court to "pierce the corporate veil" and hold Nichols personally liable for the award. (the "Motion") (Plaint. Mot. for Summ. J., ECF No. 14.) On May 6, 2013, Nichols responded, filing a Cross-Motion for Summary Judgment against NVK (the "Cross-Motion"). (Def. Cross-

Mot., ECF No. 17.) For the following reasons, NVK's Motion for Summary Judgment is DENIED, and Nichols' Cross-Motion for Summary Judgment is GRANTED.

## I. Background

The material facts are undisputed.[1] NVK and Silverleafe entered into a contract on or about August 6, 2010 (the "Contract"). (Plaint. Stat. of Undisp. Facts, ECF No. 14-2 ¶ 1.) Nichols had been actively involved in the cotton industry as a cotton merchant between 1987 and 2008, after which he took a one-year hiatus from the industry to operate farms. (Def. Stat. of Undisp. Facts, ECF No. 17-3 ¶¶ 1, 3.) On December 16, 2009, Nichols returned to the cotton industry, forming Silverleafe. (Id. ¶ 3.) Nichols contacted his longstanding cotton agent, Pridi Wong Jenson ("Jenson") of Premier Cotton LP,

[1] The facts are taken from the Complaint and the parties' Statements of Undisputed Facts. To dispute a fact properly, the non-moving party must make specific citations to the record to support each contention that a particular fact is in dispute. W.D. Tenn. L.R. 56.1(b). The non-moving party's failure to respond as required to the moving party's statement of material facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." W.D. Tenn. L.R. 56.1(d). In response to Nichols' asserted undisputed facts, on which the Court relies in this Order, NVK responds "Denied. [The statement] does not contain material or relevant facts to the present litigation." (Plaint. Resp., ECF No. 19-1 ¶¶ 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17.) NVK does not cite specific evidence in the record demonstrating that these asserted undisputed facts are genuinely in dispute. The Court accepts each as undisputed. (Id.)

to assist in launching his new cotton venture. (Id. ¶ 2, 4.) Jenson had facilitated contracts between cotton agents and NVK for a number of years and was able to facilitate the Contract between Silverleafe and NVK. (Id. ¶ 6.)

The Contract was subject to the Bylaws and Rules of the International Cotton Association Ltd. (the "ICA"). (Id. ¶ 7.) It required Silverleafe to sell NVK 100 metric tons of USA E/MOT raw cotton. (Id. ¶ 7.) The form of payment was to be an "[a]t sight irrevocable letter of credit by A1 Bank." (Contract, ECF No 19-2.) On November 18, 2010, NVK's bank A1 issued a letter of credit providing that delivery would take place on December 30, 2010, as provided under the Contract. (Compl. ¶ 8.) According to Nichols, unforeseen problems with backed-up orders in Texas warehouses prevented timely delivery. (Def. Stat. of Undisp. Facts ¶ 8.) According to NVK, Silverleafe failed to deliver the cotton because the price of cotton had increased substantially. (Compl. ¶ 17.) On January 11, 2011, the letter of credit was amended, extending the latest date of shipment to February 28, 2011. (Def. Stat. of Undisp. Facts ¶ 8; Plaint. Stat. of Undisp. Facts ¶ 3; Compl. ¶ 10; Arb. Award, ECF No. 1-1 at 6.) On March 16, 2011, an NVK representative sent a message to Silverleafe stating that he had "instructions to commence arbitration in the ICA tomorrow" and that "[t]his is the last

opportunity" for Silverleafe to deliver the cotton. (Arb. Award, ECF No. 1-1 at 6.)

Silverleafe was not able to deliver the cotton. (Arb. Award, ECF No. 1-1 at 6.) On April 5, 2011, NVK filed a request for arbitration, listing a close-out date on the Contract of March 16, 2011, the date on which the price of cotton was highest during this period. (Def. Stat. of Undisp. Facts ¶ 9; Compl. ¶ 15.) Having begun to close out the Contract with Silverleafe, NVK purchased its cotton from another cotton merchant, Bain Cotton. (Def. Stat. of Undisp. Facts ¶ 10.)

Both parties agreed to arbitration. (Plaint. Stat. of Undisp. Facts ¶ 4.) The ICA issued its ruling on December 29, 2011, finding for NVK and directing Silverleafe to pay NVK $260,142.80. (Plaint. Stat. of Undisp. Facts ¶ 4.) On May 7, 2012, NVK filed in this Court a "Petition to Confirm an Arbitration Award and Enter Judgment Thereon Pursuant to 9 U.S.C. §§ 9 and 207." (Id. ¶ 5.) On July 20, 2012, the Court entered a judgment on behalf of NVK against Silverleafe in the amount of $291,910.20. (Id. ¶ 6.)

Silverleafe was administratively dissolved on or about August 9, 2011, following notice of default on June 2, 2011. (Id. ¶ 8.) The Contract with NVK was Silverleafe's only contract to sell cotton during its existence between December 16, 2009, and August 9, 2011. (Id. ¶ 16.) NVK contends that

"Nichols formed Silverleafe for the sole purpose of entering the one contract with NVK . . . and had no intention of having Silverleafe conduct any other business." (Plaint. Stat. of Undisp. Facts, ECF No. 14-2 ¶ 16.) This conclusory allegation paraphrases NVK's theory of the case and is not a statement of undisputed fact. (Def. Resp. to Plaint. Stat. of Undisp. Facts, ECF No. 17-3 ¶ 16.) Silverleafe states that:

> NVK and Silverleafe were negotiating the price to ship another 100 metric tons of cotton during the pendency of the contact at issue in this case.

(Def. Stat. of Undisp. Facts ¶ 5.)[2]

Throughout Silverleafe's existence, Nichols had sole control of Silverleafe, hired no other employees, and used his personal residence as Silverleafe's principal place of business. (Plaint. Stat. of Undisp. Facts ¶¶ 12, 14, 15.) Silverleafe never filed state or federal tax returns. (Id. ¶ 13.) Silverleafe never maintained any business records that reflect its assets, liabilities, gross receipts, and expenses. (Id. ¶ 11.) Silverleafe did not maintain financial statements reflecting profit or loss, records about accounts payable or

---

[2] NVK has not properly disputed these facts, but objects to the Court's relying on them because they are hearsay. (Plaint. Resp., ECF No. 19-1 ¶ 5.) Any statements made in the negotiations between Nichols and NVK for an additional contract were made by the parties, falling under an exception to hearsay. See Federal Rules of Evidence 801(d)(2); see also Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999).

receivable, or documents identifying any creditors, retirement funds, trademarks, or stock certificates. (Id.) Silverleafe did not receive any paid-in capital. (Compl. ¶ 26.)

Nichols never took any actions that made it appear to NVK that Nichols was personally liable on the Contract or that he was acting as anything other than Silverleafe's agent for the transaction. (Def. Stat. of Undisp. Facts ¶ 13.) NVK never requested a personal guarantee or a performance bond. (Id. ¶ 14.)

Small cotton merchants, like Silverleafe, do not typically have sufficient capital to guarantee every cotton contract. (Id. ¶ 15.) Instead, it is common for them to rely on a letter of credit from a buyer's bank as "capital" in purchasing the cotton to be delivered to the buyer. (Id. ¶ 15.) The letter of credit serves both as a guarantee by the buyer to pay the seller on completion of the contract and as assurance to the buyer that the seller can perform as contracted.

NVK never paid Silverleafe any money, closing out the Contract because of market differences. (Id. ¶ 17.) Nichols made no money from the transaction. (Id.) He never received any money from Silverleafe, such as a salary, and he did not divert any assets from Silverleafe. (Id.)

## II. Jurisdiction and Choice of Law

This Court has diversity jurisdiction under 28 U.S.C § 1332. District courts have "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C § 1332(a)(1). NVK is a citizen of Thailand. (Compl. ¶ 3.) Nichols is a citizen of Tennessee. (Id.) NVK seeks $291,910.20 in damages and costs, plus interest. (Id. ¶ 43.) The parties are completely diverse, and the amount in controversy requirement is satisfied.

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). When the parties agree that a certain state's substantive law applies, the court will not conduct a "choice of law" analysis sua sponte. Universal Coin and Bullion, Ltd. v. FedEx Corp., No. 12-2778, 2013 WL 5173547, at *2 (W.D. Tenn., Sept. 12, 2013). The parties agree that Tennessee substantive law applies. (Plaint. Mot. Mem. of Law, ECF No. 14-1 at 4; Def. Cross-Mot., ECF No. 17 at 1.)

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [its] favor."

Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in its favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The standard remains the same when both parties move for summary judgment. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." Wiley v. United States (In re Wiley), 20 F.3d 222, 224 (6th Cir.1994).

## IV. Analysis

NVK asks the Court to "pierce the corporate veil" and hold Nichols personally liable for NVK's judgment against Silverleafe because Silverleafe was a "sham corporation" formed "for the sole purpose of entering the one contract with NVK," Nichols had "exclusive control and operation of Silverleafe without observing the most basic corporate formalities," and "Silverleafe was grossly undercapitalized." (Plaint. Mot. Mem. of Law, ECF No. 14-1 at 2, 3, 5.) Nichols asks the Court to grant the Cross-Motion because an LLC retains limited liability when corporate formalities are not maintained and piercing the corporate veil requires a fraudulent act or similar misconduct not present here. (Def. Cross-Mot., ECF No. 17 at 1.)

Under Tennessee law, a member or holder of a financial interest in "an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC." Tenn. Code. Ann. § 48-217-101(a)(1). This limitation on personal liability is preserved notwithstanding the failure of "an LLC to observe the usual company formalities or requirements relating to the exercise of its LLC power or management of its business." § 48-217-101(e).

Tennessee law strongly disfavors piercing the corporate veil. "Piercing the corporate veil" to impose personal liability is an equitable remedy "to be applied with great

caution and not precipitously, since there is a presumption of corporate regularity." Schlater v. Haynie, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). The standard that applies to corporations also applies to LLCs. Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1049 (W.D. Tenn. 2011). Tennessee courts will disregard an entity's form "only in extreme circumstances to prevent the use of a corporate identity to defraud or perform illegal acts." Edmunds v. Delta Partners, L.L.C., et al., 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (citing Pamperin v. Streamline Mfg., Inc., 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008)); see also Schlater, 833 S.W.2d at 925 ("The separate identity of a corporation may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice.") In deciding whether to pierce the corporate veil, courts consider "not only whether the entity has been used to work a fraud or injustice in contravention of public policy," but also:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions;

> (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

Federal Deposit Ins. Corp. v. Allen, 584 F. Supp. 386, 397 (E.D. Tenn. 1984).

The applicability of some of these factors, commonly known as "Allen factors," Edmunds, 403 S.W.3d at 829, does not justify piercing the corporate veil when no fraud or similar misconduct is present.

> The fact that a shareholder exercises complete dominion and control over a corporation alone is insufficient to justify piercing the corporate veil; . . . '[s]uch control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.'

Edmunds, 403 S.W.3d at 831 (citing Pamperin, 276 S.W.3d at 438). In Allen, the court disregarded the "corporate fiction" because it found that a loan issued by the defendant was part "of a three-year course of fraudulent conduct, an ongoing scheme which included the use of false financial statements . . . to defraud the bank." Allen, 584 F. Supp. at 398.

In this case, Nichols did not commit fraud or a wrongful act leading to Silverleafe's insolvency. Under NVK's theory of the case, Silverleafe did not fulfill its obligation to deliver the cotton under the Contract because "the price of cotton had

increased substantially . . . and Silverleafe simply refused to bear a loss." (Compl. ¶ 17.) Silverleafe breached the Contract because of an adverse market change. Silverleafe's subsequent insolvency and dissolution are not an "extreme circumstance[]" that justifies disregarding limited liability, but a typical circumstance in which § 48-217-101 protects entrepreneurs from personal liability. See Edmunds, 403 S.W.3d at 829 (citing Pamperin, 276 at 437).

NVK's theory that Silverleafe was a "sham corporation" because Nichols formed it "for the sole purpose of entering the one contract with NVK" is not supported by the facts. (Plaint. Mot. Mem. of Law, ECF No. 14-1 at 2, 3.) Before Silverleafe's default, Nichols had begun negotiations with NVK to have Silverleafe make another sale to NVK. (Def. Stat. of Undisp. Facts ¶ 5.) Silverleafe defaulted and was dissolved after NVK filed a request for arbitration on April 5, 2011, precluding Silverleafe from completing another transaction. (Compl. ¶ 15; Plaint. Stat. of Undisp. Facts ¶ 8.)

Silverleafe's default was not caused by any fraudulent or wrongful act. Nichols did not transfer any assets from Silverleafe, never took a salary from Silverleafe, and did not make any money from the transaction with NVK. (Id. ¶ 17.) No facts suggest that Nichols misled NVK about Silverleafe's financial situation. Nichols did not personally guarantee the

Contract or imply that he would, and NVK never requested such a personal guarantee. (Id. ¶¶ 13, 14.)

Although Silverleafe's adherence to corporate formalities was minimal, Nichols was its sole proprietor, and Silverleafe was not well capitalized, those factors do not compel disregarding Silverleafe's corporate form. Adherence to corporate formalities is not required for an LLC to maintain its limited-liability status under the statute. See § 48-217-101(e); see also Schlater, 833 S.W.2d at 925. Absent fraud or other misconduct, courts will not pierce an entity's corporate veil simply because it has a sole proprietor and becomes insolvent. See Edmunds, 403 S.W.3d at 831 (citing Pamperin, 276 S.W.3d at 438). Silverleafe's lack of paid-in capital and failure to issue stock certificates, two of the "Allen factors," more appropriately apply to a corporation than a small LLC that issues no stock. See Allen, 584 F. Supp. at 386. As customary in the industry, Silverleafe relied on a letter of credit to purchase the cotton it would sell to NVK, but the price of cotton "increased substantially" between formation of the Contract and the agreed delivery date. (Compl. ¶ 17.) Silverleafe's inability or unwillingness to cover the difference resulted in a large monetary judgment against it, but its breach of the Contract does not justify holding Nichols personally

liable for that judgment. See Allen, 584 F. Supp. at 386; Edmunds, 403 S.W.3d at 829 (citing Pamperin, 276 S.W.3d at 437).

No reasonable jury could find that NVK meets the high burden necessary to pierce Silverleafe's corporate veil, and Nichols is entitled to judgment as a matter of law. See Wasek, 682 F.3d at 467 (citing Anderson, 477 U.S. at 248).

## V. Conclusion

For the foregoing reasons, NVK's Motion for Summary Judgment is DENIED, and Nichols' Cross-Motion for Summary Judgment is GRANTED.

So ordered this 2nd day of January, 2014.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE